UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RASHAD JIMERSON,<br><br>        Plaintiff,<br><br> v.<br><br>SUN TECHNICAL SERVICES, LLC; SOUTHERN CALIFORNIA EDISON COMPANY, INC.; and DOES 1 through 10, *inclusive*,<br><br>        Defendants. | Case No. 24-cv-1150-BAS-VET<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>**(ECF No. 21)** |

   Before this Court is a motion to compel arbitration of Plaintiff's wage-and-hour claims and to dismiss his class action claims ("Motion") filed by Defendant SUN Technical Services, LLC, doing business as BHI Energy Staffing Solutions ("SUN"). (Mot., ECF No. 21.) Defendant Southern California Edison Company, Inc. ("SCE") joined the Motion (Joinder, ECF No. 22), Plaintiff opposed (Opp'n, ECF No. 25), and Defendant SUN replied (Reply, ECF No. 27). The Court finds the Motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** the Motion.

- 1 -

24cv1150

## I. BACKGROUND

Plaintiff Rashad Jimerson was employed by Defendant SUN and assigned as a Radiation Protection Technician with Defendant SCE. (Second Am. Compl. ("SAC") ¶¶ 11–12, ECF No. 15.) He began his employment in August 2023. (*Id.* ¶ 11.) On January 6, 2024, SUN re-hired Plaintiff and again assigned him as a Radiation Protection Technician with SCE. (Decl. of Leigh Tsukamoto ("Tsukamoto Decl.") ¶¶ 15–16, ECF No. 21-3.)

On May 23, 2024, Plaintiff filed suit against Defendants SUN and SCE in San Diego Superior Court, alleging pervasive violations of California wage-and-hour laws and regulations while Defendants employed Plaintiff as a Radiation Protection Technician. (Compl. ¶¶ 1–10, Ex. A to Notice of Removal ("Removal"), ECF No. 1.) In addition, Plaintiff alleges claims on behalf of a putative class of similarly situated employees premised upon the same factual bases as his wage-and-hour claims. (*Id.* ¶ 22.) On July 3, 2024, Defendant SCE removed the action to this Court, which Defendant SUN subsequently joined. (Removal, ECF No 1; Joinder, ECF No. 9.)

Defendant SUN submitted the present Motion on November 18, 2024. (Mot.) Defendant SCE also joined the Motion on November 18, 2024. (Joinder.) Defendants allege that "as a condition of Plaintiff's employment with SUN, he agreed to arbitrate any employment-related claims, but Plaintiff now refuses to adhere to the terms of the Arbitration Agreements." (Mot. 3:26–28.) Specifically, Defendants aver that, when Plaintiff completed his employee onboarding process through SUN's online interface known as "SmartSearch," Plaintiff agreed (1) to submit any and all claims arising out of or related to his employment to binding arbitration and (2) to waive his right to bring any claims as a plaintiff or class member in any class or representative arbitration proceedings. (*Id.* 1:3–12.)

### A.  SmartSearch Process

As mentioned above, Plaintiff was hired and thereafter re-hired as a Radiation Protection Technician by SUN and assigned to work for SCE in August 2023 and January

2024, respectively. (Tsukamoto Decl. ¶¶ 10–16.) According to SUN, during the onboarding process in August 2023, Plaintiff was sent an offer of employment ("Offer") through SmartSearch, an applicant tracking system. (*Id.* ¶ 11.) The Offer notes, "**By signing this letter, you are agreeing to the enclosed Dispute Resolution Protocol. Please read it carefully.**" (Offer 2, Ex. B to Tsukamoto Decl. (emphasis in original).) On the signature page, the Offer provides:

> I understand that, by agreeing to the dispute resolution protocol, including by agreeing to pursue claims arising from or relating to my employment or termination from employment with [SUN] exclusively in arbitration and on an individual basis, I am giving up important rights to pursue such legal claims on a class or collective basis, before a judge, or in a court of law, and I agree that I have been afforded sufficient time and opportunity to carefully consider these terms and to seek guidance from counsel of my choosing.

(*Id.* 3.) Attached to the Offer was the Dispute Resolution Protocol ("Arbitration Agreement"). (Arbitration Agreement, Ex. B to Tsukamoto Decl.)

Plaintiff was instructed to electronically sign the Offer and additional onboarding documents through a SmartSign link. (Tsukamoto Decl. ¶ 13.) The SmartSign link is unique and tied to employees' SmartSearch Profile. (*Id.* ¶ 9.) To access the onboarding documents, employees must click on the embedded link and create a confidential four-digit PIN. (*Id.*) After creating their PIN, employees can review, sign, and download their onboarding documents. (*Id.*) Plaintiff electronically signed the Offer, including the Arbitration Agreement, on August 4, 2023. (*Id.* ¶ 14.)

Plaintiff completed the same process when he was re-hired in January 2024. (*Id.* ¶¶ 16–18.) On January 6, 2024, Plaintiff again electronically signed his Re-Hire Offer, which included an identical Arbitration Agreement. (*Id.* ¶ 19.)

//
//
//
//

**B.     The Arbitration Agreements**

The Arbitration Agreements state:

> By accepting employment with [SUN], you acknowledge and agree that any controversy or claim arising out of or relating to your employment or the termination of your employment with [SUN] (which shall include its parents, subsidiaries, divisions and affiliates, and its and their employees, agents, shareholders, directors, officers and representatives) ("Claims") shall, subject to the terms below, be settled exclusively by binding arbitration.

(Arbitration Agreement.)

Under the Arbitration Agreements, SUN and the prospective employee agree to submit certain claims to arbitration. In pertinent part, the Arbitration Agreements outline these claims to include:

> [A]ny Claims against [SUN] or [SUN]'s Clients (as defined below) for discrimination, harassment or retaliation, tort Claims, Claims for wages, commissions, bonuses or other compensation due, Claims for actual or constructive wrongful termination, breach of express or implied contract Claims, and all other Claims for violation of any federal, state or local common law, statute, regulation, executive order, or ordinance . . . .

(*Id.*) The Arbitration Agreements define "Clients" as:

> [A]ny entity for which you provide services as part of your employment with [SUN] and to which [SUN] (or [SUN]'s parents, subsidiaries, divisions or affiliates) provides specialty project and maintenance services on a managed task basis or for which [SUN] functions as a staffing supplier or managed service provider offering staff augmentation services.

(*Id.*)

Further, the Arbitration Agreements require that the prospective employee waive his or her "right to bring any claims as a plaintiff or class member in any class or representative arbitration proceeding." (*Id.*)

The Arbitration Agreements include a delegation provision ("Delegation Clause"), which reads, "The Arbitrator, and not any federal, state, or local court or agency, shall have

exclusive authority to resolve any dispute relating to the enforceability or formation of this Agreement and the arbitrability of disputes between the parties." (*Id.*)

Finally, the Arbitration Agreements incorporate the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA Rules"). (*Id.*) AAA Rule 6 contains a delegation provision, providing, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (AAA Rules 12, Ex. J to Decl. of Yesi Lagunas, ECF No. 21-4.)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts involving interstate commerce. 9 U.S.C. §§ 1, 2. If a party is bound to an arbitration agreement that falls within the scope of the FAA, the party may move to compel arbitration in a federal court. *Id.* §§ 3–4; *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "Generally, 'the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

Given this strong federal preference for arbitration and the contractual nature of arbitration agreements, "a district court has little discretion to deny an arbitration motion" once it determines that a claim is covered by a written and enforceable agreement to arbitrate. *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). "In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute[.]" *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1010 (S.D. Cal. 2017) (quoting *Marriott Ownership Resorts, Inc. v. Flynn*, No. 14-00372 JMS-RLP, 2014 WL 7076827, at *6 (D. Haw. Dec. 11, 2014)). Instead, a district court's determinations are limited to (1) whether a valid arbitration agreement exists and, if so, (2) whether the agreement covers the relevant dispute. *See* 9 U.S.C. § 4; *Brennan v. Opus*

*Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citing *Howsam*, 537 U.S. at 83–85, and *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also Howsam*, 537 U.S. at 84 (noting that a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability that is presumptively for the court to decide). However, the Supreme Court has "repeatedly held" that "the FAA provides the default rule" that "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc v. Varela*, 587 U.S. 176, 189 (2019) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), and *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).

## III.   ANALYSIS

Defendant SUN now moves to compel arbitration and to dismiss Plaintiff's class action claims. (Mot.) Defendant SCE seeks to join SUN's motion as an express, intended third-party beneficiary of the Arbitration Agreements between Plaintiff and SUN. (Joinder 3:15–19.)

"[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187–88 (9th Cir. 1986)). These principles include incorporation by reference, assumption, agency, veil-piercing or alter ego, and estoppel. *Id.* (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Nonsignatories can also enforce arbitration agreements

as third-party beneficiaries. *Id.* As discussed above, the Arbitration Agreements cover claims brought against SUN's clients, defined in pertinent part as "any entity for which you provide services as part of your employment with [SUN] . . . or for which [SUN] functions as a staffing supplier or managed service provider offering staff augmentation services." (Arbitration Agreement.) Plaintiff provided services as part of his employment with SUN to SCE as SUN functioned as a staffing supplier to SCE. (SAC ¶¶ 11–12.) The Court agrees that SCE is an express third-party beneficiary of the Arbitration Agreements and may join the Motion to Compel Arbitration.

Defendants argue that Plaintiff agreed to arbitrate all wage-and-hour claims, including those underlying this action, when he twice signed the Arbitration Agreements in August 2023 and January 2024. (Mot. 1:3–12.) In opposition, Plaintiff argues: (1) the Arbitration Agreements are procedurally and substantively unconscionable (Opp'n 4:8–9); (2) the Delegation Clause does not preclude judicial review of the Arbitration Agreements' unconscionability (*id.* 13:15–18); and (3) the unconscionable provisions cannot be severed, rendering the entirety of the Arbitration Agreements unenforceable (*id.* 14:24–15:4). Plaintiff does not contest that he signed the Arbitration Agreements, that the Agreements cover this dispute, and that the FAA governs the Arbitration Agreements. (*See generally* Opp'n.)

Defendants argue that the Arbitration Agreements are not unconscionable and, moreover, clearly and unmistakably delegate questions of arbitrability, including enforceability and unconscionability, to the arbitrator. (Reply 1:27–2:1, 8:24–9:2.)

Because the Court finds that the Arbitration Agreements constitute valid agreements to arbitrate and the Court agrees with Defendants' interpretation of the Delegation Clause, the Motion is granted.

### A. Delegation of Arbitrability

Given that Plaintiff agreed to the Arbitration Agreements, he also agreed to their Delegation Clause, which provides, "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the

enforceability or formation of this Agreement and the arbitrability of disputes between the parties." (Arbitration Agreement.) Plaintiff contends that the Delegation Clause does not clearly and unmistakably delegate the issue of unconscionability to the arbitrator. (Opp'n 14:5–6.) Specifically, Plaintiff argues the Delegation Clause is "buried within a dense, legalistic document and is not presented in a manner that would be readily understandable to a layperson." (*Id.* 14:9–10.) Plaintiff also argues that the incorporation of the AAA Rules by reference without providing a copy to Plaintiff undermines the Delegation Clause's clarity and unmistakability. (*Id.* 14:17–21.)

The determination of whether an arbitration agreement is valid, applicable, and enforceable is reserved to the court unless "the parties clearly and unmistakably provide[d] otherwise," such as by delegating the issue of arbitrability to arbitration. *AT&T Techs.*, 475 U.S. at 649. Further, a court "need not reference extrinsic materials" where the arbitration agreement "facially gives an arbitrator the exclusive authority to determine his or her own jurisdiction." *Anderson v. Pitney Bowes, Inc.*, No. 04-cv-4808 SBA, 2005 WL 1048700, at *3 (N.D. Cal. May 4, 2005). Indeed, "[w]hen the contractual language is clear, there is no need to consider extrinsic evidence of the parties' intentions; the clear language of the agreement governs." *Han v. Synergy Homecare Franchising LLC*, 16-cv-3759-KAW, 2017 WL 446881, at *7 (N.D. Cal. 2017) (citing *EFund Cap. Partners v. Pless*, 150 Cal. App. 4th 1311, 1322 (2007)).

As mentioned above, the Delegation Clause provides that "any dispute relating to the enforceability or formation of this Agreement and the arbitrability of disputes between the parties" must be resolved through binding arbitration before the AAA. (Arbitration Agreement.) As Defendants correctly note, questions of arbitrability, enforceability, and formation include "gateway dispute[s] about whether the parties are bound by a given arbitration clause" or "whether an arbitration clause . . . applies to a particular type of controversy." *Howsam*, 537 U.S. at 84; *see also Yu v. Volt Info. Sci., Inc.*, No. 19-cv-01981-LB, 2019 WL 3503111, at *7 (N.D. Cal. Aug. 1, 2019) (holding that procedural unconscionability is a "question of arbitrability"); *Maharaj v. Charter Commc'ns, Inc.*, No.

20-cv-00064-BAS-LL, 2021 WL 5014352, at *9 (S.D. Cal. Oct. 27, 2021) (holding that gateway arbitrability issues include unconscionability).

The Court finds that the Delegation Clause clearly and unmistakably indicates that the parties intended to arbitrate all gateway arbitrability issues, including unconscionability. *See Rent-A-Ctr.*, 561 U.S. at 71–73 (determining that the delegation clause clearly and unmistakably delegated unconscionability disputes to the arbitrator as relating to the "enforceability" of the agreement). "An arbitration provision that explicitly refers arbitrability questions to an arbitrator is evidence that the parties clearly and unmistakably have referred the arbitrability question to the arbitrator." *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 954 (N.D. Cal. 2015). The Delegation Clause meets this standard. (*See* Arbitration Agreement.)

Further, the Court rejects Plaintiff's argument that the incorporation of the AAA Rules by reference undermines the clarity and unmistakability of the Delegation Clause. Because the Delegation Clause itself is clear, the Arbitration Agreements clearly and unmistakably delegate arbitrability, and there is no reason to consider the AAA Rules. *See Han*, 2017 WL 446881, at *7 (citing *EFund Cap. Partners*, 150 Cal. App. 4th at 1322).

### B. The Delegation Clause Is Not Unconscionable

Plaintiff contends that the Arbitration Agreements' provisions, including the Delegation Clause, are nevertheless unenforceable because they are unconscionable. (Opp'n 4:8–9.) Defendants argue that the Delegation Clause delegates questions of arbitrability, including unconscionability, and that this Court should not address unconscionability in light of the delegation of arbitrability. (Reply 8:24–9:2.) Further, Defendants assert that even if the Court considers the unconscionability argument, it fails. (*Id.* 1:15–16.)

"[E]ven where there is clear and unmistakable evidence of an intent to delegate questions of arbitrability to the arbitrator, the enforceability of the delegation provision itself is a separate, threshold issue" for a court to determine. *Loewen*, 129 F. Supp. 3d at 955 (citing *Rent-A-Ctr.*, 561 U.S. at 70–71). Where the delegation clause itself is

unconscionable or otherwise unenforceable under an arbitration agreement, a court may decline to enforce it. *Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1079 (N.D. Cal. 2015) (citing *Brennan*, 796 F.3d at 1132).

Accordingly, the Court will assess the unconscionability of the Delegation Clause, considering only arguments "specific to the delegation provision." *See Rent-A-Ctr.*, 561 U.S. at 73. "[T]o sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it . . . . [A] party may use the same arguments to challenge both the delegation provision and arbitration agreement, so long as the party articulates why the argument invalidates each specific provision." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023); *see also Rent-A-Ctr.*, 561 U.S. at 73; *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023); *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1127 (S.D. Cal. 2024).

### 1. California Law on Unconscionability

The parties agree that the Court should apply California law to assess whether the Delegation Clause is unconscionable. (Mot. 20:17–18; Opp'n 3:25–26.) Under California law, unconscionable contracts are those that are "so one-sided as to shock the conscience." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016). Finding that a contract is unenforceable on grounds of unconscionability requires a substantial degree of unfairness beyond "a simple old-fashioned bad bargain." *Id.* "[U]nconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 88 (2000)). Both procedural and substantive unconscionability must be present in order for a court to find a contract unconscionable, but "they need not be present in the same degree." *Id.* Plaintiff argues that both elements are present. (Opp'n 1:4–6.)

## 2. Procedural Unconscionability

Procedural unconscionability focuses on "oppression" or "surprise." "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001).

Plaintiff contends that the arbitration provisions are procedurally unconscionable because (1) the Arbitration Agreements were adhesion contracts, which Plaintiff had no meaningful opportunity to negotiate, and (2) the Arbitration Agreements contained complex legal language, and key rules and provisions were not sufficiently conspicuous. (Opp'n 8:3–7.)

### i. Plaintiff Has Shown Oppression

The Court considers Plaintiff's first argument as an argument about oppression. "The threshold inquiry in California's unconscionability analysis is 'whether the arbitration agreement is adhesive.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (en banc) (quoting *Armendariz*, 24 Cal. 4th at 114).

A contract of adhesion is defined as a "standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Flores*, 93 Cal. App. 4th at 853. A finding that a contract is one of adhesion is essentially a finding of procedural unconscionability. *Id.* This is because when the weaker party is presented with a clause and told to "take it or leave it" without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present. *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002). However, the fact that a contract is adhesive is insufficient by itself to render an arbitration clause unenforceable. *Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 723 (N.D. Cal. 2012).

The Court agrees that the Arbitration Agreements, which include the Delegation Clause, are contracts of adhesion. The Arbitration Agreements are standard form contracts presented to individuals hired by SUN. (Tsukamoto Decl. ¶¶ 11, 16.) The Arbitration

Agreements were prepared by SUN and presented to Plaintiff as a condition of employment. (*Id.*) There is no indication that Plaintiff had any "equality of bargaining power" with SUN so that he could negotiate the terms of the Arbitration Agreements, including the inclusion of the Delegation Clause. For these reasons, Plaintiff's challenge to the Delegation Clause as procedurally unconscionable on the ground that it is part of an adhesion contract has merit. *See Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 245–46 (2014) ("For the same reasons that we conclude the delegation clause is part of a contract of adhesion . . . [it] is procedurally unconscionable."). Even so, use of an adhesion contract establishes only some degree of procedural unconscionability and is not itself a ground for finding that a contract, or one of its provisions, is unenforceable. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015).

### ii. Plaintiff Has Not Shown Surprise

The Court deems Plaintiff's second argument as an argument about unfair surprise but disagrees that there is any element of surprise. Specific to the Delegation Clause, Plaintiff challenges that the Delegation Clause uses complex and legalistic language and was not sufficiently conspicuous. (Opp'n 6:10–7:13); *see Bielski*, 87 F.4th at 1011 ("[T]o sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it[.]").

Surprise "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982); *see also Ingle v. Circuit City Stores, Inc.*, 382 F.3d 1165, 1171 (9th Cir. 2003) (same). The element of surprise must be balanced against the fact that a party is not under an obligation to highlight an arbitration agreement, including the delegation clause, nor is it required to specifically call that clause to a plaintiff's attention. *See Sanchez*, 61 Cal. 4th at 914.

The Arbitration Agreements, including the Delegation Clause, were contained on the fourth page of Plaintiff's Offer and Re-Hire Offer. (Tsukamoto Decl. Ex. B.) The top of the second page of the Offer notes, in bold, "**By signing this letter, you are agreeing**

**to the enclosed Dispute Resolution Protocol. Please read it carefully**." (Offer 2 (emphasis in original).) On the same page, the letter states, "This offer of employment is contingent upon . . . your agreement to the enclosed Dispute Resolution Protocol." (*Id.*) The top of the third page of the Offer affirms, "My signature below signifies that I received, read, understand and agree to the terms of this offer letter, including the dispute resolution protocol enclosed herewith." (*Id.* 3.) Finally, the third page of the Offer also states:

> I understand that, by agreeing to the dispute resolution protocol, including by agreeing to pursue claims arising from or relating to my employment or termination from employment with [SUN] exclusively in arbitration and on an individual basis, I am giving up important rights to pursue such legal claims on a class or collective basis, before a judge, or in a court of law, and I agree that I have been afforded sufficient time and opportunity to carefully consider these terms and to seek guidance from counsel of my choosing.

(*Id.*) The Arbitration Agreements attached to the Offer and Re-Hire Offer are merely one page long and written in legible font and size. (Arbitration Agreement.) Plaintiff was sent the Arbitration Agreement twice and signed it twice. (Tsukamoto Decl. ¶¶ 14, 19.)

Where the arbitration provisions presented in an adhesion contract are highlighted for the employee, any procedural unconscionability is "limited." *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1470–71 (2009) (finding limited procedural unfairness where the arbitration agreement "was contained on the last page of a seven-page employment application, underneath the heading 'Please Read Carefully . . .'"); *see also Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 174–80 (2015) (finding "a minimal degree of procedural unconscionability" from a two-page contract of adhesion that unquestionably highlighted the arbitration provisions). Here, the Arbitration Agreements were not buried in a lengthy employment contract. Rather, they were contained on the last page of a four-page employment offer following multiple references to the Arbitration Agreements, both explaining the Agreements' importance and instructing Plaintiff to carefully read the Agreements. (Offer.) Plaintiff's arguments that the Arbitration Agreements and Delegation Clause are unclear and inconspicuous are not persuasive.

Plaintiff fails to identify how the remainder of his procedural unconscionability arguments, namely his challenge to the incorporation of the AAA rules by reference, make the Delegation Clause unconscionable. *See Holley-Gallegly*, 74 F.4th at 1002 ("[I]f a party cites provisions outside of the delegation clause in making an unconscionability challenge, it must explain how those provisions make *the fact of an arbitrator deciding arbitrability unconscionable*." (emphasis in original)). Based on these facts, the Court finds that there is no element of surprise as to the Arbitration Agreements and the Delegation Clause.

### 3. Substantive Unconscionability

Plaintiff contends that the Arbitration Agreements are substantively unconscionable because (1) the Agreements create a unilateral reservation of certain rights for SUN, (2) the fee-sharing provision may potentially deter employees from pursuing claims, (3) the class action waiver undermines the enforcement of statutory rights, and (4) the Agreements attempt to shorten the limitations period by imposing Massachusetts law. (Opp'n 8:13–13:12.) The substantive unconscionability inquiry focuses on "the effects of the contractual terms and whether they are overly harsh or one-sided." *Flores*, 93 Cal. App. 4th at 853.

"A party is . . . permitted under *Rent-A-Center* to challenge the enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680–81 (9th Cir. 2024) (quoting *Holley-Gallegly*, 74 F.4th at 1002). "[I]f a party cites provisions outside of the delegation clause in making an unconscionability challenge, it must explain how those provisions make *the fact of an arbitrator deciding arbitrability unconscionable*." *Holley-Gallegly*, 74 F.4th at 1002 (emphasis in original). Plaintiff fails to make any arguments that the Delegation Clause specifically is substantively unconscionable. (*See generally* Opp'n.) Moreover, Plaintiff has not satisfied his burden of explaining how the unilateral reservation of certain rights, fee-sharing provision, class action waiver, and imposition of Massachusetts law make the fact of an arbitrator deciding arbitrability unconscionable, or why an arbitrator cannot determine if these provisions together are unconscionable. (*See*

*generally id.*)  In sum, the Court does not find the Delegation Clause substantively unconscionable.

### 4. Plaintiff Has Not Proven the Delegation Clause Is Unenforceable

Although Plaintiff has shown some degree of procedural unconscionability as to the Delegation Clause, he has failed to establish that the provision is substantively unconscionable. Because California law requires a showing of both types of unconscionability, *Mohamed*, 848 F.3d at 1210; *Armendariz*, 24 Cal. 4th at 114, Plaintiff has failed to meet his burden to show that the Delegation Clause is unenforceable. Accordingly, the Court will enforce the delegation provision.

## C. Stay and Dismissal

Defendants ask this Court to dismiss Plaintiff's putative class action claims. (Mot. 25:7–9.) Under the FAA, where, as here, a court "determines that all of the claims raised in the action are subject to arbitration," the court may either "stay the action or dismiss it outright." *See Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). "The Ninth Circuit has suggested, without expressly holding, that a class encompassing members with valid arbitration agreements and others not subject to the arbitration agreements cannot be certified." *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 986 (N.D. Cal. 2019) (citing *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018)). Given this Court's decision to grant Defendants' request to compel arbitration, Plaintiff cannot continue to serve as class representative of the putative class.

Accordingly, the Court dismisses Plaintiff's putative class action claims but without prejudice. Plaintiff's inadequacy as a class representative does not speak to the merits of the class claims.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion. (ECF No. 21.) Specifically, the Court **ORDERS** the parties to proceed to arbitration with the claims pressed in the Complaint in the manner provided for in the Arbitration Agreements;

**DISMISSES** without prejudice Plaintiff's putative class action claims; and **STAYS** this action.

The Court directs the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case. The decision to administratively close this case pending resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing. An order administratively closing a case is a docket management tool that has no jurisdictional effect.").

**IT IS SO ORDERED.**

DATED: June 6, 2025

Hon. Cynthia Bashant, Chief Judge
United States District Court